UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HART OIL & GAS, INC.,

                                          No. 12-13558 t11

     Debtor.

## <u>OPINION</u>

Before the Court is Marilyn Smelcer's motion to require Kirk Kennedy to return at least $22,753 to the liquidation trustee for redistribution. Smelcer argues that the payment was contrary to Kennedy's fee agreement with the liquidation estate. Kennedy counters that the agreement was changed in September 2015 to allow him to collect the funds. The Court rules that the amended agreement is ambiguous, and that a proper interpretation requires the Court to grant Smelcer's motion.

## I.    <u>FACTS</u>

The Court finds the following facts:[1]

1.        Debtor commenced this Chapter 11 case on September 25, 2012.

2.        On March 6, 2013, the United States Trustee appointed a committee of unsecured creditors.

3.        On May 31, 2013, the U.S. Trustee filed a motion to convert the case or appoint a chapter 11 trustee.

4.        The Court appointed Robert L. Finch as the chapter 11 trustee on June 25, 2013.

---

[1] The Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

5.      Three plans were filed in this case, by competing parties.  One of the plans was filed by an "ad hoc committee" of unsecured creditors, namely MMS Energy, LLC, Hartway Energy, LLC, and Wayman Company (the "Ad Hoc Committee").

6.      The Court confirmed the Ad Hoc Committee's plan on September 27, 2013.

7.      The confirmation order provides, with respect to post-confirmation professional fees:

> Each month the Liquidation Trustee or Sale Committee will provide notice of any attorneys' fees incurred including a description of legal services and cost of such services (the "Notice of Fee Statement") to Citizens Bank of Kilgore, the United States Trustee ("UST"),  and either the Sale Committee or Liquidation Trustee (as the case may be); (ii) if neither Citizens Bank, the Liquidation Trustee, UST, nor the Sale Committee serves a written objection to the Liquidation Trustee and Sale Committee within ten (10) days of service of the  Notice of Fee Statement, the Liquidation Trustee may pay the fees without further order of the Court; (iii) if either Citizens Bank, the UST, the Liquidation Trustee or the Sale  Committee objects to the Notice of Fee Statement, the Liquidation Trustee may pay only those fees which are not specifically objected to and, the Court will review the remaining fees to which an objection has been made in a summary hearing based on the criteria of reasonableness and necessity.

8.      On or about May 8, 2014, Wayne Hartman (the principal of Wayman Company and Hartway Energy LLC) sent the following email to Kennedy:

> I wish to confirm that you have agreed to contest the claims by the bank, and its attorneys for their fees, under a 40% reverse contingency, whereby you would absorb all costs and expenses of the litigation, including discovery, travel, pleadings, expert witness fees, etc., and all said costs and expenses would be compensated (if at all) from the 40% payable to you, if anything, of any reduction in the amount payable to the bank and its attorneys from the amounts set forth in their claims.

(the "Reverse Contingency Fee Agreement").  Kennedy responded the same day:

> Your email below states our agreement.  I need Marilyn to send me a confirming email and I will proceed with all deliberate speed and resources to get the Bank's claim reduced.

Smelcer replied the next day: "Please do these projects with the terms stated in Wayne's email."

9.     On December 15, 2014, Smelcer, through Kennedy, filed an adversary proceeding against Citizens Bank of Kilgore ("Citizens Bank"), seeking to avoid the bank's asserted liens on estate collateral (the "Adversary Proceeding").  Smelcer amended the complaint in March 2015, substantially broadening the claims to include allegations of significant wrongdoing on the part of Citizens Bank, and asking for millions in damages.

10.     The parties did not amend the Reverse Contingency Fee Agreement, though it appears they all believed that a regular 40% contingency fee would be used for the affirmative claims, and that Kennedy would absorb all costs.

11.     Smelcer, through Kennedy, objected to Citizens Bank's claim on March 3, 2015. By an order entered June 16, 2015, the Court reduced the bank's claim by $308,501.74.

12.     On July 2, 2015, the Court dismissed many but not all of the claims asserted in the Second Amended Complaint against Citizens Bank.

13.     Shortly thereafter, Kennedy sought approval from the U.S. Trustee to be paid $60,469.86 from estate assets, with another $62,930.80 deferred until a later date, pursuant to the Reverse Contingency Fee Agreement.

14.     The U.S. Trustee filed an objection to the fee request on August 10, 2015.

15.     Kennedy filed a reply to the U.S. Trustee's fee objection on August 25, 2015 (the "Reply").  In the Reply, Kennedy reiterates that he is entitled to 40% of any reduction in the Bank's claim, and that his firm would "advance" all expenses for the litigation.

16.     On August 19, 2015, Smelcer filed a *pro se* request for direction on how to pay administrative expense claimants, including Kennedy, given the administrative insolvency of the estate.  By that time, the attorney-client relationship between Smelcer and Kennedy had broken down.

17.     Smelcer, Hartman, and Kennedy mediated the fee dispute and related matters on September 14, 2015.  The result was a settlement agreement drafted by Kennedy's counsel.  The agreement, signed that day by the three of them, provides in part:

> The signatories to this Agreement ratify and agree and approve of Kirk A. Kennedy representing Marilyn M. Smelcer (and any substitute liquidation trustee) against some or all of the Defendants[2] in the following two contingent fee engagements:
>
>> 40% of gross recovery of any amount paid to, or realized by, any Trustee; and
>>
>> 40% of the gross amount saved or reduced from the claim asserted by Citizens Bank of Kilgore.
>
> Kennedy will advance reasonable expenses in pursuit and defense of the claims in the two engagements.  Kennedy has an attorney's lien in these amounts, and any fees shall be paid directly from recovery or the sources of funds saved, without reductions for equitable reasons.

The agreement also provided:

> On or before September 25, 2015, these terms shall be presented to the bankruptcy court in the form of a Stipulation and Agreed Order approving the terms.

18.     Kennedy drafted and submitted a stipulated order memorializing the settlement agreement, which provides in part:

> The Parties to this Stipulation  and Agreed Order agree and approve of Kennedy representing the Liquidation Trustee under the Plan in any litigation against Citizens Bank of Kilgore (the "Bank"), John N. Ehrman, and any other defendant, on a  contingency basis on the following terms: (a) 40% of the gross recovery of any amount paid to,  or realized by, the Liquidation Trustee and (b) 40% of the gross amount saved or reduced from  the secured claims asserted by the Bank against the Debtor or its estate.   Kennedy will  advance reasonable expenses in connection with its representation of the Liquidation Trustee and  shall have an attorneys' lien against any proceeds recovered or saved, as the case may be, in accordance with the percentages indicated herein.

(the "Agreed Order").  Kennedy, Smelcer, Hartman, the U.S. Trustee's office, Hunt & Davis, P.C., Robert Finch, and Christopher Terry all approved the Agreed Order, which was entered September

---

[2] A defined term meaning Citizens Bank, John Erhman, and Palo Petroleum.

Case 12-13558-t11     Doc 698     Filed 12/07/16     Entered 12/07/16 14:44:18 Page 4 of 11

28, 2015.

19.     Smelcer resigned as the liquidating trustee effective on or about October 27, 2015, and Robert Yaquinto, Jr. was appointed the successor liquidating trustee.

20.     After the Court entered the Agreed Order, Kennedy incurred $22,753 in expert witness fees or other costs in the Adversary Proceeding.

21.     Citizens Bank settled with Yaquinto on or about June 8, 2016, agreeing to pay the liquidation estate $412,000.

22.     On July 11, 2016, Yaquinto paid Kennedy $187,553, representing 40% of the Citizens Bank settlement and the $22,753 in costs. Smelcer objects to, inter alia, the $22,753 payment.

23.     When Smelcer and Hartman settled with Kennedy on September 14, 2015, they did not intend to agree that Kennedy could be reimbursed for litigation expenses he paid. Rather, they understood that the previous agreement remained in place, *i.e.*, that Kennedy would get a 40% contingency fee but "absorb" all litigation costs.

24.     On the other hand, when Kennedy settled he thought Smelcer and Hartman agreed to change his fee arrangement so he could be reimbursed for any litigation costs he paid.

## II.     DISCUSSION

A.     Construing the Agreed Order.

Stipulated orders should be construed under applicable rules of contract interpretation. *In re Hassen Real Estate Partnership*, 4 Fed. Appx. 537 (9th Cir. 2001) (a stipulated order "functions as a contract; as such, its terms must be analyzed under California's rules of contract interpretation"); *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation

of its terms presents a question of contract interpretation"); *In re Martinez*, 2015 WL 3814935, at *7 (Bankr. D.N.M.) (rules of contract interpretation apply to the stipulated order at issue).[3]

B.    <u>Ambiguity</u>.

A contract is ambiguous if it is capable of more than one reasonable interpretation. *Heye v. Am. Golf Corp., Inc*., 80 P.3d 495, 499 (N.M. App. 2003) ("[a] contract is ambiguous if separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning"); *Sanchez v. Nitro-Lift Technologies, L.L.C.,* 762 F.3d 1139, 1147 (10th Cir. 2014) (same).

Generally, where an ambiguity exists courts consider extrinsic evidence to determine the parties' intent. *Presbyterian Healthcare Services v. Goldman, Sachs & Co.*, 122 F.Supp.3d 1157, 1185 (D.N.M. 2015) (collecting cases). If extrinsic evidence is unavailable or inconclusive, courts also apply rules of contract interpretation. *See Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1235 (1993) (in the absence of extrinsic evidence, "the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation."); *Sprint Nextel Corp. v. Middle Man, Inc.,* 822 F.3d 524, 534 (10th Cir. 2016) (same); *In re Rafter Seven Ranches, L.P.,* 414 B.R. 722, 735 (10th Cir. BAP 2009) (bankruptcy courts can resolve ambiguity in court-approved settlement by applying rules of construction).

Here, the Court finds the Agreed Order is ambiguous on the issue of cost reimbursement, for two reasons. First, the ordinary meaning of "advance" is different than the parties' prior usage of that term. The sentence setting out the contingency fee only entitles Kennedy to 40% of the amount recovered or saved. The next sentence says that Kennedy "will advance reasonable

---

[3] Like the parties, the Court will apply New Mexico contract law, though for purposes of this ruling it does not materially differ from federal law.

expenses in connection with [his] representation of the Liquidation Trustee." The term "advance" usually implies repayment. *See, e.g.,* Webster's Ninth New Collegiate Dictionary ("to supply or furnish in expectation of repayment"). As used in the Agreed Order, however, the term just as likely means "pay." That is because, inter alia, Kennedy repeatedly used the term "advance" to mean "pay" in filings predating the settlement, at a time when all parties agreed he would absorb costs. For example, Kennedy made the following statements in his Reply:

> The terms of the fee agreement are: (a) the Firm will receive 40% of any reduction in the Bank's claim and (b) the Firm will **advance** all expenses for the Bank Litigation, including the expenses of experts, depositions, travel, and the attorneys' fees of co-counsel, Modrall Sperling. Since May 8, 2014, the Firm has **advanced** approximately $27,000 in expenses in prosecution of the Bank Litigation.
>
> . . . .
>
> The Firm **advanced** expenses in the Bank Litigation for which it has not been reimbursed. It would not be fair to require the Firm to **advance** expenses at 100% yet only be paid a fraction of that amount as suggested by the UST.

Reply, pp. 1, 3. It is not surprising that, three weeks later, Smelcer and Hartman understood "advance" to mean "pay" in the settlement agreement and Agreed Order.

The language granting a lien to Kennedy is also ambiguous. The settlement agreement could be read to entitle Kennedy to a lien for expenses. One sentence requires him to advance reasonable expenses, and the next states he "has an attorney's lien in these amounts." However, the Agreed Order is different, and grants Kennedy "an attorneys' lien against any proceeds recovered or saved, as the case may be, in accordance with the percentages indicated herein." This lien does not secure "advances," only the 40% contingent fee "percentages."

Given the ambiguity, the Court will apply traditional canons of construction to interpret the Agreed Order.

C.      Restatement (Second) of Contracts.

"When the parties attach different meanings to the same terms, [New Mexico courts] apply … the Restatement of Contracts… to determine their meaning." *Chisos, Ltd. v. JKM Energy, L.L.C*, 258 P.3d 1107, 1111 (N.M. App. 2011). *See also Farmington Police Officers Ass'n v. City of Farmington*, 137 P.3d 1204, 1211 (N.M. App. 2006) (the substantive rules governing contract interpretation are summarized in the restatement). The Restatement also reflects federal common law. *See, e.g., In re Peanut Crop Insurance Litigation,* 524 F.3d 458, 470-471 (4th Cir. 2008) (federal common law derives from principles of general contract law, including the Restatement); *Castle v. Caldera*, 74 F. Supp. 2d 4, 10 (D.D.C. 1999) (the Restatement "embodies" federal common law). The Restatement contains the following relevant contract interpretation rules:

•      An interpretation that gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation that leaves a part unreasonable, unlawful, or of no effect (§ 203(a));

•      Courts should interpret the contract as a whole and interpret words in light of all the circumstances and the principal purpose of the parties (§ 202);

•      When choosing among reasonable meanings, the meaning is preferred that operates against the drafter (§ 206).

D.      Applying the Restatement's Rules to This Dispute.

1.      The Agreed Order Should be Interpreted to Comply with Applicable Law.

Ambiguous contracts like the Agreed Order should be interpreted to comply with the law. *See In re Sunnyland Farms, Inc.,* 2016 WL 1212723 (Bankr. D.N.M.) (collecting cases). Here, New Mexico Rules of Professional Conduct require that contingent fee agreements "must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party." New Mexico Rules of Professional Conduct 16-105(D). The Texas rule is

similar.[4]  *See* Texas Rules of Professional Conduct 1.04(d) ("the agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated").  Given the ambiguity injected by the parties' previous dealings about whether "advance" means "pay with the expectation of repayment" or simply "pay," the Court concludes that Kennedy did not clearly notify his client (the liquidation trustee) that the estate would have to pay litigation expenses.  Adopting Smelcer's proposed construction of the Agreed Order harmonizes it with applicable law.

        2.       <u>The Agreed Order Should Be Interpreted In Light of Circumstances and Its Principal Purpose</u>.  The Court should interpret the Agreed Order in light of the circumstances and the principal purpose of the parties.  Restatement, § 203; *Mark V, Inc.*, 845 P.2d at 1235 (courts should interpret the contract in light of all circumstances surrounding its execution); *Pub. Serv. Co., of New Mexico v. Diamond D. Const. Co.*, 33 P.3d 651, 660 (N.M. App. 2001) (citing the Restatement); *First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.,* 412 F.3d 1166, 1171 (10th Cir. 2005) (ambiguous contract is interpreted in the light of all the circumstances known to the parties at the time of its execution).  The purpose of the Agreed Order was to determine how to make partial payments to administrative claimants in an administratively insolvent case.  Under these circumstances, it would be surprising for the disputing claimants to have agreed to increase Kennedy's share of a pie that was much too small to begin with.  When interpreted in light of the settlement's principal purpose, the ambiguity should be construed to require Kennedy to pay expenses.

        3.       <u>The Agreed Order Should be Construed against the Drafter</u>.  Finally, the Agreed Order should be construed against the drafter.  Restatement § 206; *Castillo v. Arrieta,* 368

---

[4] Mr. Kennedy is licensed in Texas, and performed work from his Texas office.

P.3d 1249, 1253 (N.M. App. 2016) ("We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it."); *Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1249 (10th Cir. 2007) (under federal common law, ambiguities in insurance contract were to be construed against the drafter).

Hartman's May 8, 2014 email was very clear that Kennedy was to pay costs and expenses. The language drafted by Kennedy and his counsel attempting to change that arrangement, on the other hand, is much less so. The Court thinks it is fair that an ambiguous document drafted by a client's lawyer, memorializing an agreement between them, should be construed against the lawyer. This is particularly true where the agreement changes the fee arrangement so the lawyer can potentially receive more. The Court will construe the ambiguity against Kennedy.

III.    CONCLUSION

The provision of the Agreed Order relating to the payment of expenses is ambiguous. After considering the parties' intent and the applicable rules of contract construction, the Court construes the Agreed Order to mean that Kennedy must pay for the litigation expenses without a right of reimbursement. Smelcer's motion will be granted, to the extent she wants Kennedy to return $22,753 to the estate. All other requested relief will be denied. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 7, 2016

Copies to:

Kirk A. Kennedy
515 Louisiana, Suite 200
Houston, Texas 77002

Alice N. Page
P.O. Box 608
Albuquerque, NM 87103

Cliff Gramer
3733 Eubank Blvd, NE
Albuquerque, NM 87111